USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Aug. 17, 2015

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X
DANIEL MARTIN GOLD,                 :
                                    :
                  <u>Plaintiff</u>,        :
                                    :    No. 14 Civ. 5485 (JFK)
     -against-                      :
                                    :    **OPINION & ORDER**
AMERICAN MEDICAL ALERT CORP.,       :
                                    :
                  <u>Defendant</u>.        :
------------------------------------X

<u>APPEARANCES</u>

    For Plaintiff Daniel Martin Gold:
        KARLINSKY LLC
        By:  Martin E. Karlinsky
            Amy A. Lehman

    For Defendant American Medical Alert Corp.:
        FOX ROTHSCHILD LLP
        By:  James Lemonedes
            John A. Wait
            Oksana Wright

**JOHN F. KEENAN, United States District Judge:**

    Before the Court is Defendant American Medical Alert Corp.'s ("AMAC") motion to dismiss the second claim in Plaintiff Daniel Martin Gold's complaint. For the reasons that follow, AMAC's motion is granted.

## I. Background

    Unless otherwise noted, the following facts are drawn from Gold's complaint and assumed true for the purposes of this motion. Gold is a citizen of Virginia, and AMAC is a New York corporation with its principal place of business in Long Island City, New York. AMAC is a healthcare communications company

that provides services such as emergency response systems and electronic medication reminder devices. (Compl. ¶ 5.) Gold began acting as a consultant for AMAC in November 2008. (Compl. ¶ 9.) On January 1, 2010 Gold entered into a three-year employment agreement with AMAC whereby he would manage the Healthcare and Safety Monitoring Systems team. (Compl. ¶ 10.) On March 15, 2012, the parties entered into the superseding employment agreement at issue here ("Agreement"). It covered the three-year period from January 1, 2012 through December 31, 2014. (Compl. ¶ 14.)

Under that Agreement, Gold became Senior Vice President of AMAC and its Chief Business Development Officer. His compensation consisted of (a) a base salary; (b) participation in AMAC's bonus plan; (c) healthcare, retirement, and other benefits such as a so-called Tranche II bonus; (d) an automobile stipend, as well as reimbursement of business expenses and gasoline costs; and (e) participation in AMAC's Capital Contribution and Incentive Compensation Plan ("CCICP"), in which Gold invested just over $100,000 at the time he executed the agreement. (Compl. ¶¶ 19-20.)

Pursuant to the Agreement, AMAC could only fire Gold if he materially breached the Agreement; acted criminally, with gross negligence, or in bad faith; was convicted of a felony or misdemeanor of moral turpitude; violated AMAC's ethics code or

2

sexual harassment guidelines; or willfully took or failed to take an action that caused the deterioration of AMAC's business or brought AMAC into public disgrace. (Agreement ¶ 9(a).) If AMAC terminated Gold without cause, Gold was entitled to his salary and benefits through December 31, 2014, as well as his prorated bonus for the year of his termination. (Compl. ¶ 25.) Additionally, Gold would receive a defined payment based on his investment in the CCICP. (Compl. ¶ 21.) Under the Agreement, Gold could terminate his employment if AMAC failed to reappoint him to his office, reduced Gold's compensation, or adversely changed the scope of his authorities or duties. (Compl. ¶ 23.)

Gold alleges that he fully performed under the Agreement and did not act or fail to act in a way that justified a "for cause" termination. After a new CEO took over in September 2012, Gold alleges that his role at AMAC diminished. He was stripped of the title Chief Business Development Officer, had to report to an intermediary instead of reporting directly to the new CEO, and was no longer on the Executive Management Team. (Compl. ¶¶ 31-35.) He was also given "wholly unrealistic, and for all intents and purposes unachievable financial objectives." (Compl. ¶ 36.) Gold alleges that these changes demonstrate that AMAC breached the Agreement. On October 31, 2012, AMAC fired Gold. He alleges that the reasons given were pretextual and did

3

not rise to the level of "cause" under the Agreement. (Compl. ¶ 48-50.)

The complaint asserts two claims against AMAC. Gold first claims that AMAC breached the Agreement by failing to pay him his salary and provide him benefits through December 31, 2014. His second claim, at issue on this motion, is that the amounts due under the Agreement were wrongfully withheld, entitling him to double recovery as well as attorney's fees and costs under New York Labor Law. Gold seeks damages in excess of $75,000, which, along with the fact that Gold and AMAC are citizens of different states, means that this Court has diversity jurisdiction under 28 U.S.C. § 1332.

AMAC now moves to dismiss Gold's second claim, arguing that New York Labor Law does not cover the complete failure to pay wages or severance benefits as it is limited to discrete withholdings from wages.

## II. Discussion

### A. Legal Standard

A cause of action survives a motion to dismiss only if it "states a plausible claim for relief." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (internal quotation marks omitted). In deciding a motion to dismiss, a court must accept the complaint's allegations as true and draw all reasonable

inferences in the non-moving party's favor. See <u>Nielsen v. Rabin</u>, 746 F.3d 58, 62 (2d Cir. 2014).

**B. Analysis**

Gold's second claim asserts a violation of New York Labor Law § 190 et seq ("Article 6"). Although initially framed generally, the complaint later clarifies that Gold is alleging that AMAC violated New York Labor Law § 193, which prohibits an employer from making "any deduction from the wages of an employee," N.Y. Lab. Law § 193, by failing to pay and withholding Gold's "wages due upon termination of his employment." (Compl. ¶ 63.) He seeks double recovery as provided by New York Labor Law § 198 in the form of liquidated damages, as well as attorney's fees and costs. (Compl. ¶ 64.)

It is settled that section 198 does not "permit recovery . . . on a common-law contractual remuneration claim" as the recovery of attorney's fees and liquidated damages is "limited to actions for wage claims founded on the substantive provisions of Labor Law article 6." <u>Gottlieb v. Kenneth D. Laub & Co.</u>, 82 N.Y.2d 457, 464–65 (1993). Thus, Gold is only entitled to section 198's double recovery if he can show that AMAC violated section 193, the only Article 6 claim he makes.

Plaintiff is not entitled to relief under section 198 because he has not sufficiently pled a violation of section 193. As Defendant argues, Plaintiff has not pled "any deduction" from

5

wages because the deduction Plaintiff claims is merely the total withholding of wages, which is the essence of the breach of contract claim.  Section 193 requires something more:  a specific instance of docking the employee's pay.  Because Gold only pleads a total withholding, his second claim must be dismissed.

This conclusion is supported by several cases from this district. See, e.g., O'Grady v. BlueCrest Capital Mgmt. LLP, --- F. Supp. 3d ----, 2015 WL 3740701, at *9 (S.D.N.Y. 2015) ("[S]ection 193 applies to amounts deducted from wages, not unpaid wages and severance, which is alleged here." (emphasis in original)); Moras v. Marco Polo Network, Inc., No. 11 Civ. 2081, 2012 WL 6700231, at *11 (S.D.N.Y. Dec. 20, 2012); Malinowski v. Wall St. Source, Inc., No. 09 Civ. 9592, 2012 WL 279450, at *3 n.5 (S.D.N.Y. Jan. 31, 2012); Monagle v. Scholastic, Inc., No. 06 Civ. 14342, 2007 WL 766282, at *2 (S.D.N.Y. Mar. 9, 2007); see also Jankousky v. N. Fork Bancorporation, Inc., No. 08 Civ. 1858, 2011 WL 1118602, at *4 (S.D.N.Y. Mar. 23, 2011) ("Until the wages are agreed upon, there can be no deduction within the meaning of the NYLL.").

Other courts in this circuit have reached the same conclusion. See, e.g., Hinterberger v. Catholic Health Sys., 299 F.R.D. 22, 36 (W.D.N.Y. 2014) ("[A]n employer's alleged failure to pay for all hours worked does not constitute an improper

deduction from wages for purposes of Section 193."); <u>Ellis v. Common Wealth Worldwide Chaueffuered Transp. of NY, LLC</u>, No. 10 Civ. 1741, 2012 WL 1004848, at *10 (E.D.N.Y. Mar. 23, 2012) ("The provision does not cover failure to pay an employee for time worked . . . ."); <u>Strohl v. Brite Adventure Ctr., Inc.</u>, No. 08 Civ. 259, 2009 WL 2824585, at *9 (E.D.N.Y. Aug. 28, 2009) (holding that employee's section 193 claim failed because employer "did not 'deduct' any amounts from her wages, but simply failed to pay her all the wages she had earned."); <u>Ireton-Hewitt v. Champion Home Builders Co.</u>, 501 F. Supp. 2d 341, 353 (N.D.N.Y. 2007) (holding that employee's section 193 failed claim where employer never tendered payment).[1]

There are, however, two issues that give the Court pause. First, Plaintiff cites another line of cases that allow an employee to recover the full amount of a vested bonus under a section 193 theory. (Gold Mem. 5.) However, all but one of those cases appear to assume, without deciding, that the employee could recover the full bonus, and there is no

---

[1] The genesis of this line of cases appears to be <u>Monagle</u>, which observes that "Section 193 has nothing to do with failure to pay wages or severance benefits, governing instead the specific subject of making deductions from wages." 2007 WL 766282, at *2. For this proposition, <u>Monagle</u> cites <u>Kletter v. Fleming</u>, which found section 193 inapplicable because plaintiff had failed to allege "any specific deduction." <u>Kletter</u>, 32 A.D.3d 566, 567 (N.Y. App. Div. 3d Dep't 2006). As far the Court can tell, the case that <u>Kletter</u> cites for its proposition has nothing to do with section 193. See <u>Slotnick v. RBL Agency Ltd.</u>, 271 A.D.2d 365, 365–66 (N.Y. App. Div. 1st Dep't 2000). Nevertheless, <u>Monagle</u>'s commonsense observation is supported by other considerations, as discussed above.

7

indication from any of the cases that the parties disputed whether the withholding was specific enough to be considered a "deduction." Indeed, those cases explicitly frame their analysis as interpreting the definition of "wages," not deduction. See, e.g., Cloke-Browne v. Bank of Tokyo-Mitsubishi UFJ, Ltd., No. 10 Civ. 2249, 2011 WL 666187, at *6-7 (S.D.N.Y. Feb. 9, 2011) ("Plaintiff thus argues that his guaranteed bonus compensation qualifies as 'wages' under New York Labor Law and that, as such, Defendants cannot withhold those payments for work done in 2008."); Econn v. Barclays Bank PLC, No. 07 Civ. 2440, 2010 WL 9008868, at *4 (S.D.N.Y. June 10, 2010) ("Defendants contend that the performance bonus falls outside the definition of 'wages' according to the holding in Truelove v. Northeast Capital & Advisory Inc."); Farricker v. Penson Dev., Inc., No. 07 Civ. 11191, 2009 WL 860239, at *7-8 (S.D.N.Y. Mar. 31, 2009) ("The Amended Complaint alleges that the Participation Payments for certain Deals completed during Plaintiff's employment constitute 'wages' within the meaning of Labor Law § 190(1)."); Falk v. FFF Indus., Inc., 731 F. Supp. 134, 143 (S.D.N.Y. 1990) ("Accordingly, the Court finds that wages for the purpose of §§ 193 and 198 includes salary and other benefits."); Ryan v. Kellogg Partners Inst. Servs., 19 N.Y.3d 1, 16 (2012) ("Since Ryan's bonus therefore constitutes 'wages' within the meaning of Labor Law § 190(1), Kellogg's

neglect to pay him the bonus violated Labor Law § 193 and entitles Ryan to an award of attorney's fees under Labor Law § 198(1-a)." (citation omitted)); Wachter v. Kim, 82 A.D.3d 658, 663 (N.Y. App. Div. 1st Dep't 2011) ("Accordingly, such compensation is "wages" that are protected by Labor Law § 193(1) and § 198 . . . .").

Plaintiff points to no case law, and the Court found none on its own, interpreting these cases as resolving the issue of what counts as a "deduction" in favor of Plaintiff's construction. At least one court considered the reasoning in one of Plaintiff's cited cases, Wachter, and specifically declined to extend it based on the majority view in this circuit. See Malinowski, 2012 WL 279450, at *3 n.5.

The Court will, however, briefly distinguish Ryan because it is a case from the New York Court of Appeals. Although Ryan includes broad language suggesting that Gold's reading may be correct, it is clear from its discussion of Truelove v. North East Capital & Advisory Inc., 95 N.Y.2d 220 (2000), that the Ryan court was, like Gold's other cases, primarily focused on the definition of "wages." Ryan, at 19 N.Y.3d at 15-16. In Truelove, the New York Court of Appeals held that bonuses that amounted to "[d]iscretionary additional remuneration, as a share in a reward to all employees for the success of the employer's entrepreneurship," did not constitute wages for purposes of

9

Article 6. 95 N.Y.2d at 224. In distinguishing Truelove, the Ryan court held that the employee's bonus was "guaranteed and non-discretionary" and had been "earned and vested" before the employee left his job. Ryan, 19 N.Y.3d at 16. The court did not squarely address what qualifies as a deduction, and therefore is not particularly helpful here.

This Court's other concern is that the statute is plausibly susceptible to a broader interpretation. It prohibits "any deduction," which could mean that an employer cannot withhold or deduct any amount for any reason. That would include an employer withholding the entire amount of a salary because it contends, as here, that it fired an employee for good cause. The New York Court of Appeals lends at least some support to this broad reading by defining "deduction" as "an act of taking away or subtraction" without making reference to specific instances of docking an employee's pay. Angello v. Labor Ready, Inc., 7 N.Y.3d 579, 584 (2006).

But there are strong reasons to reject this broad reading of the statute. First, the purpose of Article 6 is "to strengthen and clarify the rights of employees to the payment of wages," id. at 583-84 (internal quotation marks omitted), and a breach of contract action already sufficiently protects an employee's rights to his total earned wages and does not need further reinforcement. The other sections of Article 6

10

"strengthen and clarify" the employee's right to wages by setting the frequency of payments, see § 191, and protecting, inter alia, benefits and wage supplements, see § 198-c; gratuities, see § 196-d; and sales commissions, see § 191-c. These would not necessarily be protected in a bread-and-butter breach of contract claim and therefore benefit from fortification by statute. Plaintiff's reading of the statute would simply make any employee's common-law breach of contract claim also actionable under section 193.

Second, the New York Court of Appeals has rejected a reading of section 198 that includes recovery for a common-law contract claim. See Gottlieb, 82 N.Y.2d at 464–65. Part of the reasoning was that such a recovery would lead to a "windfall" for employees. See id at 465. It is true that in Gottlieb the employee raised no section 193 claim, or any other Article 6 claim for that matter. See id. at 460. But a plaintiff that raises a section 193 claim that wholly duplicates his common-law breach of contract claim would receive the same type of windfall that the Court of Appeals cautioned against.

Third, New York courts recognize that the purpose of section 193 is to "place the risk of loss for such things as damaged or spoiled merchandise on the employer rather than the employee." Hudacs v. Frito-Lay, Inc., 90 N.Y.2d 342, 349 (1997). This demonstrates that the "deductions" are better understood

11

as, and limited to, things like fines, payments, or other forms of pay docking. The list of authorized deductions in section 193 itself offers further support for that reading, as each permissible deduction is for a discrete purpose such as payment for insurance premiums, gym membership, tuition, and day care. See § 193(b)(i)-(xiv). These exceptions suggest that a "deduction" is more targeted and direct than the wholesale withholding at issue here.

With these considerations in mind, the Court rejects Gold's broad reading of "any deduction" in section 193. Based on these considerations, this Court joins the other courts in this circuit that have concluded that a section 193 claim requires plaintiff to allege a specific withholding of wages.

### III. Conclusion

For the foregoing reasons, Defendant's motion dismiss Plaintiff's second claim is granted.

**SO ORDERED.**

Dated: New York, New York
August 13, 2015

_____
JOHN F. KEENAN
United States District Judge